IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RENEE N.,[1]                                              Case No. 6:20-cv-01131-SB

                        Plaintiff,                        **OPINION AND ORDER**

          v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[2]

                        Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

     Renee N. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42

_____

     [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

     [2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration
on or about July 9, 2021 and is named as the defendant in place of "Commissioner Social
Security Administration." *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

U.S.C. § 405(g). All parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in December 1972, making her forty-four years old on January 1, 2017, her alleged disability onset date. (Tr. 10, 183-91, 214.) Plaintiff has a tenth-grade

education and past work experience as a childcare provider, karaoke jockey, and receptionist. (Tr. 206-07.) In her application, Plaintiff alleges disability due to post-traumatic stress disorder ("PTSD"), fatigue, fibromyalgia, a torn meniscus, a shattered kneecap, degenerative disc disease, degenerative lumbar spinal stenosis, nervous narcolepsy, type 2 diabetes, and chronic back pain. (Tr. 221.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on December 22, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 180-81.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on February 8, 2019. (Tr. 25-57.) On March 21, 2019, the ALJ issued a decision denying Plaintiff's application. (Tr. 7-20.) On May 14, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 11-20.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 26, 2017, her application date. (Tr. 12.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: degenerative disc disease, obesity, and depression. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations: (1) Plaintiff can sit for six hours in an eight-hour workday, and stand or walk for four hours in an eight-hour workday; (2) Plaintiff can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; (3) Plaintiff can occasionally stoop, kneel, crouch, and crawl; (4) Plaintiff can occasionally reach overhead with the right, dominant upper extremity; (5) Plaintiff can have occasional contact with coworkers and the general public; and (6) Plaintiff can tolerate only occasional changes to work routines and processes. (Tr. 15.) At step four, the ALJ concluded that Plaintiff had no past relevant work. (Tr.

18.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a production assembler, electrical assembler, and order caller. (Tr. 18-19.)

## DISCUSSION

Plaintiff argues on appeal that the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony; and (2) failing to provide legally sufficient reasons for discounting the opinions of Plaintiff's medical providers, Dr. Mark Mueller, M.D. ("Dr. Mueller") and Patrick Sawyer, P.A. ("P.A. Sawyer"). (Pl.'s Opening Br. at 5-18.) As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. The Court therefore reverses the Commissioner's decision and remands this case for further proceedings consistent with this opinion.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 16, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to do so here.

### 1.    Reported Activities

The ALJ discounted Plaintiff's testimony on the ground that it is inconsistent with Plaintiff's reported activities. (*See* Tr. 17, finding that "[t]he claimant's alleged limitations are not fully supported by her reported activities in the medical and other evidence of record"). Plaintiff argues that her reported activities are not inconsistent with her symptom testimony or alleged limitations. (Pl.'s Opening Br. at 16-18.) The Court agrees.

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the

claimant's reported activities provide a valid reason for an adverse credibility determination."
(citing *Light*, 119 F.3d at 792)). "Daily activities may also be 'grounds for an adverse credibility
finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving
the performance of physical functions that are transferable to a work setting.'" *Ghanim*, 763 F.3d
at 1165 (citation omitted). "[I]f a claimant engages in numerous daily activities involving skills
that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon
making specific findings relating to those activities." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th
Cir. 2005) (citation omitted).

In discounting Plaintiff's testimony, the ALJ cited to Plaintiff's ability to perform self-
care, prepare meals, do household chores, and go to the store. (Tr. 17.) However, the ALJ did not
make specific findings on how Plaintiff's activities of daily living would transfer to a
competitive work environment. (*See id.*)

Nor did the ALJ explain any inconsistencies between Plaintiff's testimony and her
reported activities. *See Fritz v. Berryhill*, 685 F. App'x 585, 586 (9th Cir. 2017) (holding that the
ALJ failed to satisfy the clear and convincing reasons standard and noting that the ALJ "did not
explain how" certain evidence "impacted [the claimant's] credibility"); *see also Rocha v.
Berryhill*, 771 F. App'x 447, 448 n.2 (9th Cir. 2019) ("[A]n ALJ must *specifically* identify the
testimony [from the claimant] she or he finds not to be credible and . . . explain what evidence
undermines the testimony.") (simplified). As an initial matter, the ALJ noted that Plaintiff
"testified that she could perform adequate self-care" (Tr. 17), but Plaintiff did not testify at the
hearing about her self-care. (*See* Tr. 25-57.) In addition, while Plaintiff testified that she goes to
the grocery store, she stated that she often uses a motorized cart. (*See* Tr. 39, "Q: [How] often do
you ride the cart when you're at the grocery? A: It depends on how many times I go shopping

and how I'm feeling that day. I went twice this last week. I think I rode the cart once this week."). The ALJ also mentioned Plaintiff's ability to prepare meals, but the single treatment note the ALJ cited to describes an incident where, while Plaintiff was cooking, she experienced "a searing intense pain from below [her] navel down towards her genitals that spread across [a] width of 4 inches" and caused her "nausea with the pain." (Tr. 299.) Contrary to the ALJ's findings, Plaintiff's limitations in performing these activities are consistent with her self-reported symptoms.

The ALJ also discounted Plaintiff's symptom testimony on the ground that Plaintiff was able to walk for exercise, line dance, swim, and move heavy furniture. (Tr. 17.) The Ninth Circuit has held that "activities such as walking . . . and swimming are not necessarily transferable to the work setting with regard to the impact of pain." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Indeed, "[a] patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Id.*

In any event, Plaintiff's activities, as actually performed during the relevant period, are consistent with her alleged limitations. For example, treatment notes indicate that Plaintiff's medical providers advised Plaintiff that she remain active, and recommended that she walk and swim for exercise. (Tr. 281, 339-41, 583.) Consistent with these recommendations, in 2015 and 2016 (prior to her alleged disability onset date), Plaintiff walked regularly, used the swimming pool at her apartment complex, and line danced in her living room as part of a home exercise program. (Tr. 339-40 (October 2015), 332 (June 2016), 324 (September 2016), 353 (October 2015)). However, consistent with her allegations of disability, Plaintiff experienced increased pain beginning in January 2017, which impacted her ability to continue these activities. (*See* Tr.

36, Plaintiff testified at February 2019 hearing that "I don't do a lot these days, but before I was – I was walking a lot and that was helping a little bit"; 281, treatment note dated May 2, 2017, indicating that Plaintiff "is trying to walk when she is able to, about 30 minutes twice a week on a good day," and that "[s]he is hoping to get back into water program when her pool opens th[is] summer"; 299, treatment note dated January 6, 2017, indicating that Plaintiff "tried working out yesterday which she did through line dancing and part way through she had to stop because of spasming pain in her lower back"; 307, treatment note dated January 16, 2017, noting that Plaintiff "wound up in the emergency [room] because of low back and abdominal pain"; 309, treatment note dated January 12, 2017, reporting that Plaintiff's "back is worse" and that she is "noticing a lot of fatigue through her core"; 371, treatment note from January 18, 2017, indicating that "most [of Plaintiff's] pain is caused by walking with her lower back" and that she can "only walk about 2 blocks without severe pain and fear of falling").[3]

Finally, the ALJ's reliance on a single incident in which Plaintiff moved furniture in her home does not amount to substantial evidence contradicting her proffered symptoms. In fact, the evidence demonstrates that Plaintiff was incapable of performing this activity without resulting pain and mobility issues. (*See* Tr. 505, treatment note indicating that Plaintiff experienced a "3 day acute flare up of chronic mid to low back pain after lifting a heavy couch at home," is "using a walker," and "has severe back pain at SI joints and lumbar spine that radiates upward to her neck, resulting in a migraine").

---

[3] *See also* Tr. 478, treatment note dated October 25, 2018, noting joint pain, joint swelling, muscle weakness, and neck pain; 484, treatment note dated August 14, 2018, reporting ankle pain and swelling, joint pain, joint swelling, and muscle weakness; 497, treatment note dated April 5, 2018, reporting back pain, extremity numbness and weakness; 505, treatment note dated February 27, 2018, noting Plaintiff is "feeling more depressed about her level of pain[,]" and is "sleeping in her recliner"; 519, treatment note dated June 12, 2018, indicating Plaintiff reported muscle and joint pain, muscle weakness, and trouble walking.

In sum, the ALJ erred in discounting Plaintiff's testimony based on her reported activities. *See Garza v. Colvin*, No. 14-04425, 2015 WL 1285307, at *10 (C.D. Cal. Mar. 20, 2015) (holding that the ALJ's reliance on the claimant's daily activities was misplaced because the ALJ "listed a few daily activities . . . [but] failed to elaborate at all on how these activities actually conflict with [the claimant's] subjective symptom testimony"); *Vertigan*, 260 F.3d at 1049-50 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.'") (citation omitted).

### 2.    Conservative Treatment

The ALJ also discounted Plaintiff's testimony based on her treatment history. (Tr. 17.) In support of his finding, the ALJ noted that (1) Plaintiff's treatment has been "very conservative, largely over-the-counter and prescription medication," and (2) Plaintiff "has not generally received the type of medical treatment one would expect given the claimant's description of her symptoms." (*Id.*) Plaintiff argues that the ALJ focused only on her testimony regarding her mental health symptoms and did not explain why he deemed Plaintiff's treatment for her physical impairments to be conservative. (Pl.'s Opening Br. at 16.)

It is well settled that an ALJ may discount a claimant's testimony based on evidence of conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). "[I]n assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded by regulation on other grounds* (quoting *Tommasetti*, 533 F.3d at 1039).

The Court concludes that substantial evidence does not support the ALJ's discount of Plaintiff's testimony on this ground. The record reveals that Plaintiff was prescribed a variety of medications for her pain, including hydrocodone, Flexeril, Meclizine, Meloxicam, Lyrica, Lidocaine, Capsaicin, and Tizanidine (Tr. 333, 339, 465, 504), received epidural steroid injections (Tr. 339, 394, 402, 504, 544) and acupuncture (Tr. 324, 333, 544), attended physical therapy (Tr. 299-315), and saw a pain-management specialist (Tr. 318-54). With respect to Plaintiff's physical impairments, the ALJ provided no explanation as to why he deemed this treatment "conservative." *Cf. Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("We have previously doubted that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." (citing *Garrison*, 759 F.3d at 1015 n.20)).

Furthermore, "[c]ourts have held that an ALJ's reliance on a claimant's conservative treatment history is misplaced when there is no indication that more aggressive treatment options are appropriate or available." *Nichole K. v. Saul*, No. 3:19-cv-00630-SB, 2020 WL 2393854, at *6 (D. Or. May 11, 2020) ("[T]he record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be [faulted] for failing to pursue non-conservative treatment options where none exist." (citing *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)); *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) ("Because the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit Plaintiff 'for failing to pursue non-conservative treatment options where none exist.'") (citation omitted); *Marshall v. Berryhill*, No. 16-cv-00066, 2017 WL 2060658, at *14 (S.D. Cal. May 12, 2017) (noting that the ALJ discounted the claimant's testimony based on her conservative treatment, which included taking prescribed medications and "receiving Botox injections for her migraines," and rejecting the ALJ's reliance

on the claimant's conservative treatment because there was "no indication that a more aggressive treatment [regimen] was available").

Here, with respect to Plaintiff's physical impairments, there is no indication that more aggressive treatment options were available or appropriate to treat Plaintiff's degenerative disc disease or obesity. In fact, despite Plaintiff's history of lumbar surgery, Plaintiff's spine specialist recommended *against* further surgery. (*See* Tr. 549, "At this time, due to the significant obesity of this patient, I would not think her to be a surgical candidate without first exhausting all conservative treatments."). Therefore, there was no basis for the ALJ's conclusion that more aggressive treatment options were available and appropriate or that Plaintiff failed to pursue those options. *See Nichole K.*, 2020 WL 2393854, at *6 ("[T]here is no indication that more aggressive treatment options were available or appropriate to treat Plaintiff's migraines and syncopal episodes. With respect to Plaintiff's migraines, the record shows that Plaintiff tried and failed several medications, Plaintiff diligently took her medication until she got pregnant in 2017, Plaintiff received Botox injections and oxygen therapy, and Plaintiff's physician referred her to a neurologist. The record, however, fails to show that more aggressive options were available or appropriate.").

For these reasons, the Court concludes that the ALJ improperly discounted Plaintiff's testimony on the ground that she pursued only conservative treatment.

### 3.    Conflicting Medical Evidence

The ALJ also discounted Plaintiff's testimony on the ground that it was inconsistent with the objective medical evidence. (*See* Tr. 16, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence"). The Ninth Circuit has held that it is appropriate to discount a claimant's

testimony based on inconsistencies with, among other things, "the objective medical evidence[.]" *Eblen v. Saul*, 811 F. App'x 417, 420 (9th Cir. 2020) (citing *Tommasetti*, 533 F.3d at 1039).

However, an ALJ may not reject a claimant's symptom testimony solely because the testimony appears unsupported by the objective medical evidence. *See Burch*, 400 F.3d at 680 ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain"). Here, the two other reasons cited by the ALJ to discount Plaintiff's testimony are its inconsistency with her reported activities and her conservative treatment. (*See* Tr. 17; *see also* Def.'s Br. at 12-14, acknowledging that the ALJ discounted Plaintiff's subjective symptom testimony due to alleged inconsistencies with her reported activities, conservative treatment, and medical evidence in the record). As discussed above, the Court concludes that the ALJ erred in discounting Plaintiff's testimony based on her reported activities and conservative treatment. Thus, even if the objective medical evidence is inconsistent with Plaintiff's proffered symptoms, the ALJ cannot rely on a lack of objective medical evidence alone to discredit her testimony. *See, e.g.*, *Taylor v. Berryhill*, 720 F. App'x 907, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant's testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted). Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

///

///

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

Plaintiff filed her application in April 2017. (Tr. 183.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r of Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified), *appeal filed* No. 21-350006 (9th Cir. Jan. 4, 2021). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'" *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors." *Id.* (simplified). At a minimum, "'this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion.'" *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "the more relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2).

"The ALJ may but is not required to explain how other factors were considered," including (1) the "relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination)," (2) "whether there is an examining relationship," (3) specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Id.* The ALJ is, however, "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical,'" and courts "must 'continue to consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations omitted).[4]

### B.    Analysis

Plaintiff argues that the ALJ erred in rejecting the medical opinions of Dr. Mueller and P.A. Sawyer. (Pl.'s Opening Br. at 5-12.) The Court agrees.

#### 1.    Dr. Mueller

Dr. Mueller served as Plaintiff's treating physician beginning in September 2016. (Tr. 376, 540.) In February 2019, Dr. Mueller provided a written opinion evaluating the severity and

---

[4] The Commissioner argues that the new regulations "govern here . . . and supersede prior case law that conflicts with them," and that "the Court should not rely on any case law applying the old scheme." (Def.'s Br. at 5-6.) The Commissioner is referring to case law that relied on the old regulations "evincing preference for a treating or examining source, and requiring heightened standards for an ALJ's treatment of such opinions[.]" (Def.'s Br. at 3.) Consistent with its prior decision addressing this issue, the Court will consider whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of Dr. Mueller's and P.A. Sawyer's opinions, because "[t]he Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting a medical opinion," and "the new regulations still require the ALJ to explain [his] reasoning for discounting a medical opinion . . . to allow for meaningful judicial review." *Robert S.*, 2021 WL 1214518, at *4 (citations omitted).

limiting effects of Plaintiff's type 2 diabetes, PTSD, migraines, renal cell carcinoma, obesity, and chronic back pain. (Tr. 540.) Dr. Mueller noted that Plaintiff's primary symptoms include back pain, fatigue, muscle aches, and right flank pain; Plaintiff can lift and carry up to ten pounds, stand or walk for two hours, and sit for five hours total in an eight-hour workday; Plaintiff would need to spend part of her workday in a reclined position to relieve lower back and renal pain; Plaintiff can frequently reach, handle, finger, and feel; Plaintiff can occasionally balance, stoop, bend, and crouch; Plaintiff can never climb, kneel or crawl; Plaintiff would be off task ten percent of a workweek; and Plaintiff would miss sixteen hours (i.e., two workdays) or more each month due to back pain, migraines, renal cancer, and gastrointestinal symptoms resulting from her diabetes treatment. (Tr. 540-42.)

The ALJ determined that Dr. Mueller's opinion was unpersuasive. (Tr. 18.) In support of his finding, the ALJ noted that Dr. Mueller (1) "admitted that his opinion was only an estimate of the claimant's possible functioning," and (2) "the severe restrictions are not entirely consistent with the medical and other evidence of record, including the claimant's reported activities." (*Id.*)

The Court concludes that the ALJ erred in discounting Dr. Mueller's opinion. The ALJ rejected Dr. Mueller's opinion because Dr. Mueller indicated that his assessed limitations were "based on best estimates." (Tr. 540.) However, given that both the state agency consultants could provide no more than their best estimates of Plaintiff's functional capacity based on a review of the treatment record, this is not a legally sufficient reason to reject Dr. Mueller's opinion in favor of the similarly estimated medical opinions of the state agency consultants. *See Flowers v. Colvin*, No. 6:15-cv-01951-SB, 2016 WL 807693, at *11 (D. Or. Feb. 11, 2016) (rejecting the ALJ's reason for discounting a medical opinion where it was "only an estimate" because "his

PAGE 16 – OPINION AND ORDER

opinion is no more an 'estimate' than the residual functional capacity assessment completed by the non-examining state agency consultant, which was given great weight").

The ALJ also erred in rejecting Dr. Mueller's opinion on the ground that it is inconsistent with the objective medical evidence and Plaintiff's reported activities. As explained below, the ALJ's conclusion is not supported by substantial evidence in the record.

As previously noted, Dr. Mueller opined that Plaintiff's chronic back pain, migraines, fatigue, muscle aches, renal cancer, and gastrointestinal issues would cause her to miss at least two workdays a month. (Tr. 541.) He assessed limitations in Plaintiff's ability to reach, handle, finger, and feel, and balance, stoop, bend, and crouch. (Tr. 542.) Dr. Mueller also opined that Plaintiff should avoid climbing, kneeling, or crawling. (*Id.*) The ALJ made a general finding that Dr. Mueller's opinion was "not entirely consistent with the medical and other evidence of record, including the claimant's reported activities." (Tr. 18.) In an earlier section of his decision, the ALJ noted that physical examinations generally demonstrated Plaintiff's ability to transition from sitting to standing without difficulty, full range of motion, normal motor function, five out of five muscle strength, intact sensation, reflexes, and muscle tone. (Tr. 16.)

As an initial matter, the ALJ does not identify which of Plaintiff's activities purportedly conflict with Dr. Mueller's opinion, nor does he explain how Plaintiff's ability to perform self-care, prepare meals, do household chores, and go to the store is inconsistent with Dr. Mueller's assessed limitations. Contrary to the ALJ's findings, there is ample medical evidence in the record from multiple of Plaintiff's other medical sources that supports Dr. Mueller's opinion. (*See, e.g.*, Tr. 257-58, 282, 285, 288, 292, 295, 301, 355, 388-89, 441, 544, 547, 553 (treatment notes indicating reduced strength, decreased sensation, and swelling in Plaintiff's lower extremities); Tr. 285, 293, 359-61, 430, 547-48, 586, 600 (records indicating lumbar lordosis,

disc desiccation, or decreased lumbar range of motion); Tr. 284, 292, 383, 389, 547, 600-01 (records demonstrating abnormal gait); Tr. 254, 257-58, 272, 282, 297, 299, 301, 309, 321, 324, 327, 332, 339, 344, 383, 388-89, 430, 441, 460, 470, 522, 533-34, 544, 553, 590, 599 (records indicating complaints of back and lower extremity pain); Tr. 272, 282, 288, 394-95, 399, 402-03, 408, 412-13, 441, 557, 561-62, 575, 588 (records indicating upper extremity pain, tingling and reduced strength); Tr. 257, 282, 288-89, 301, 388-89, 406, 418-19, 421-22, 469-71, 517, 520, 536, 544, 553, 569-570, 583, 610, 622-23 (records noting gastrointestinal issues, incontinence, and flank pain); Tr. 340, 343, 347-49, 385, 388-89, 398, 547, 583 (records indicating migraines or headaches); 288, 322, 344, 382, 519, 544, 591, 620 (records indicating fatigue)). All of these medical records include objective findings consistent with Dr. Mueller's conclusions.

The ALJ failed to discuss this objective medical evidence from other sources that is consistent with Dr. Mueller's opinion. Because the ALJ cherry-picked facts when resolving Dr. Mueller's opinion and failed to take account of significant medical evidence, the Court concludes that the ALJ erred in discounting Dr. Mueller's opinion. *See Thompson v. Comm'r of Soc. Sec.*, No. 2:20-cv-3-KJN, 2021 WL 1907488, at *7 (E. D. Cal. May 12, 2021) (remanding decision because "the ALJ cherry-picked facts" and "failed to discuss significant objective medical evidence from other sources that is consistent with [the treating physician's] opinion"); *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KHN, 2021 WL 1966202, at *6 (E.D. Cal. May 17, 2021) (same).[5]

_____

[5] To date, it appears that no circuit court has weighed in on what kinds of findings constitute "cherry-picking" under the new regulations. However, district courts have found that the ALJ errs when she ignores evidence supporting or consistent with a rejected medical opinion. *See, e.g.*, *Shirley C. v. Comm'r Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *8 (D. Or. July 15, 2021) ("The Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for discounting a medical opinion. The new regulations do not, however, displace the Ninth Circuit's entire body of caselaw relating to

For these reasons, the Court concludes that substantial evidence does not support the

ALJ's reasons for discounting Dr. Mueller's opinion.

### 2.    P.A. Sawyer

Plaintiff presented for a spine and back pain consultation with P.A. Sawyer on February

13, 2017. (Tr. 543-51.) As part of his consultation, P.A. Sawyer reviewed some of Plaintiff's

medical records and conducted a clinical interview and physical examination. (Tr. 543-51.) P.A.

Sawyer noted that Plaintiff had a long history of back pain and had undergone a

microdiscectomy in May 2014. (Tr. 543.) During the interview, Plaintiff endorsed worsening

back pain, and buttock and bilateral leg pain with numbness and tingling in her feet. (Tr. 544,

stating that her pain is "worse than ever," and rating it as "8 out of ten"). Plaintiff indicated that

it is difficult to bear weight on her right leg when walking, and standing for any length of time

---

medical evidence, which remain binding on this Court. For example, it remains true that ALJs
may not cherry-pick evidence in discounting a medical opinion.") (citation omitted); *White v.
Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *20-21 (N.D. Ohio Mar. 8,
2021) (finding that the ALJ failed to explain why a physician's opinion was not persuasive
despite significant evidence in the record that supported and was consistent with the opinion, and
relying on prior circuit precedent that "[i]f relevant evidence is not mentioned, the court cannot
determine if it was discounted or merely overlooked"); *Kaehr v. Saul*, No. 3:19-CV-1171-PPS,
2021 WL 321450, at *2-4 (N.D. Ind. Feb. 1, 2021) (finding the ALJ "cherry-picked evidence,
and thus didn't provide substantial evidence to support his conclusion," where the decision did
not discuss the supportability of the physician's opinion nor consider the totality of the record in
evaluating the opinion's consistency); *Vellone v Saul*, No. 20-cv-00261 (RA) (KHP), 2021 WL
319354, at *9-10 (S.D.N.Y. Jan. 29, 2021) (finding the ALJ's disability determination "not
supported by substantial evidence" where the ALJ "cherry-picked treatment notes that supported
his RFC determination [at times indicating normal gait and spine] while ignoring equally, if not
more significant evidence [indicating abnormal gait and worsening lower back pain] in those
same records"); *Audrey P. v. Saul*, No. 20-92MSM, 2021 WL 76751, at *9-10 (D.R.I. Jan. 8,
2021) (remanding for further proceedings where "dramatic example[s]" of "cherry-picking" led
the ALJ to ignore a medical source's "overarching conclusion that Plaintiff suffered from
significant and unresolved '[f]unctional difficulty includ[ing] standing, sitting, bending over and
walking all 2/2 pain'"); *Pearce v. Saul*, No. 0:20-1623-PJG, 2020 WL 7585915, at *4-6 (D.S.C.
Dec. 22, 2020) (finding the ALJ "cherrypicked the evidence and ignored the evidence supporting
[the physician's] opinion," and noting that "[c]herry-picking the records to accept only evidence
that weighs against a finding of disability is not permitted, and specious inconsistencies cannot
reasonably support a rejection of medical opinions or other evidence").

causes additional pain and fatigue. (*See id.*, noting that her pain is exacerbated by standing, sitting, walking, bending, extending, twisting, and lifting, and that she is now sleeping in a recliner due to pain.) Plaintiff also indicated that she had fallen three times in the past month due to weakness. (*Id.*) PA Sawyer noted that Plaintiff presented as anxious and "super obese," with a body mass index ("BMI") of 53.02. (Tr. 547.)

During the physical examination, P.A. Sawyer observed that Plaintiff was "slow to rise from [a] seated position" and "steady when standing" but "unsteady when ambulating and antalgic to the [r]ight." (*Id.*) P.A. Sawyer noted pronounced lumbar lordosis, tenderness over L4-5, painful flexion and limited range of motion, reduced strength of the bilateral hips, quads, hamstrings, and ankles, and 1/4 bilateral patellar and Achilles reflexes. (Tr. 547-48.) He ordered an MRI, which demonstrated mild degenerative changes of the lumbar spine at L4-5 with mild right foraminal narrowing. (Tr. 549-50, 586, 600.) Plaintiff scored a thirty-one on the Oswestry BACK Disability Index, which indicates a "severe" level of disability. (Tr. 549.) P.A. Sawyer assessed degenerative lumbar spinal stenosis, bilateral sciatica, lumbar herniated nucleus pulposus, and status-post diskectomy. (Tr. 549.) P.A. Sawyer opined that "[a]t this time, due to the significant obesity of this patient, I would not think her to be a surgical candidate without first exhausting all conservative treatments." (*Id.*) He prescribed Meloxicam and Lyrica, and recommended that Plaintiff: (1) "avoid sitting or standing for extended periods of time, if possible, without a change in posture"; (2) "[l]ifting limits should be no more than 10 pounds"; and (3) "care should be taken to avoid [] bending, lifting, and twisting at the same time." (Tr. 550.)

Plaintiff argues that the ALJ erred by failing to discuss P.A. Sawyer's February 2017 findings and identify any basis to reject P.A. Sawyer's medical opinion. (Pl.'s Opening Br. at

12.) The Commissioner responds that the ALJ is not required to discuss all of the medical

evidence presented, and that P.A. Sawyer's opinion "was not probative or relevant" because it

predates Plaintiff's April 2017 disability application. (Def.'s Br. at 9.) The Court disagrees.

Contrary to the Commissioner's assertions that the ALJ need not address all relevant

medical opinions, "[t]he new regulations require ALJs to articulate how persuasive they find all

of the medical opinions and explain how they considered the supportability and consistency

factors," which "appears to necessitate that an ALJ specifically account for the legitimate factors

of supportability and consistency in addressing the persuasiveness of a medical opinion." *Robert*

*S.*, 2021 WL 1214518, at *3 (simplified); *see also* 20 C.F.R. 416.920c ("We will articulate in our

determination or decision how persuasive we find *all of the medical opinions* and all of the prior

administrative medical findings in your case record.") (emphasis added). The ALJ erred by

failing to articulate in his decision how persuasive he found P.A. Sawyer's opinion, including its

supportability and consistency, as the new regulations require. *See Fancy M.V. v. Comm'r of Soc.*

*Sec.*, No. 6:20-cv-00252-BR, 2021 WL 879048, at *5 (D. Or. Mar. 9, 2021) ("Although the

regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and

assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered

the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'")

(quoting 20 C.F.R. § 404.1520c(a) and (b)(1))).

The Commissioner argues that P.A. Sawyer's opinion was of limited probative value

because it predated Plaintiff's application date. The Commissioner is correct that "[m]edical

opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citing *Fair v. Bowen*, 885 F.2d

597, 600 (9th Cir. 1989)). Significantly, however, "the *Carmickle* court identified the claimant's

alleged onset date as the relevant date, rather than the application date, for purposes of assessing the relevance of a medical opinion." *Linkswiler v. Colvin*, No. 3:16-CV-05158-DWC, 2016 WL 5817055, at *4 (W.D. Wash. Oct. 5, 2016) (holding that the ALJ's discount of medical opinion "relie[d] entirely on the fact [the] opinion was rendered before Plaintiff's [SSI] application was filed[,]" which was not "a specific and legitimate reason to discount [the] opinion" (citing *Carmickle*, 533 F.3d at 1164-65)).

Plaintiff filed her application for benefits in April 2017, but her alleged disability onset date was January 1, 2017. (Tr. 183.) Thus, P.A. Sawyer's examination of Plaintiff in February 2017 falls within Plaintiff's alleged period of disability and the ALJ erred by not addressing the opinion. *See Garrison*, 759 F.3d at 1012-13 ("Where an ALJ does not explicitly reject a medical opinion or set forth [] legitimate reasons for crediting one medical opinion over another, he errs."); *Lingenfelter*, 504 F.3d at 1038 n.10 ("[A]n ALJ cannot avoid [agency] requirements simply by not mentioning [a] treating physician's opinion and making findings contrary to it.").

## III.   REMEDY

### A.   Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit- as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court remands this case for further proceedings because there are unresolved conflicts between evidence the ALJ erroneously rejected and other record evidence,[6] and because the ALJ has not yet addressed P.A. Sawyer's opinion. *See Brandon v. Saul*, 821 F. App'x 857, 858 (9th Cir. 2020) (explaining that it is appropriate for a district court to remand for further proceedings where there are unresolved conflicts or ambiguities "between the erroneously rejected [evidence] and other record evidence"); *Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain [record] evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings."). In addition, based on the record before the Court, doubts remain as to whether Plaintiff is, in fact, disabled, and therefore the Court must remand the case for further proceedings. *See Waldher v. Comm'r Soc. Sec. Admin.*, No. 6:15-cv-02012-HZ, 2016 WL 7190553, at *7 (D. Or. Dec. 12, 2016) ("As in *Burrell*, Plaintiff here may be disabled. However, the record also contains cause for serious doubt and, thus, this Court must remand the case for further proceedings.").

---

[6] For example, Plaintiff testified that she passed out at least thirty times within one year due to nervous narcolepsy and social anxiety. (Tr. 38.) In contrast, however, the objective medical evidence does not support the frequency or severity of Plaintiff's proffered narcolepsy symptoms.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS this case for further proceedings consistent with this opinion.

DATED this 5th day of October, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge